DELLA MOONEY, DEFENDANT IN ERROR, v. CECELIA W. McMAHON, ADMINISTRATRIX OF MARY WARD MOONEY, DECEASED, PLAINTIFF IN ERROR.

Argued February 27, 1912—Decided June 5, 1912.

Domestic services rendered by a daughter in a household of which her father is the head, will not raise an implied promise on the part of a stepmother, who requested the services, to pay for them out of her own estate, to the exoneration of the husband. To fix such a liability there must be, either an express contract to pay out of her own estate, or circumstances clearly showing the assumption of individual liability on her part, exclusive of that of her husband.

On contract.

Before Justices BERGEN, VOORHEES and KALISCH.

For the plaintiff in error, *Smith & Brady*.

For the defendant in error, *W. H. Walters*.

The opinion of the court was delivered by

BERGEN, J. This is a suit by a daughter against the estate of her stepmother for personal services. The plaintiff recovered a judgment, and defendant brings error.

The only error assigned is refusal to nonsuit upon the ground that the services were chargeable to the husband, and not to the wife. The claim of the plaintiff is an engagement and promise to pay by the wife. The husband, wife and a son lived together in a house owned by the husband, and the wages of both were given to the wife, who put it in the bank in her own name and used it for the ordinary domestic expenses, including clothing, for the family. In fact she paid for everything that the husband was bound to supply, receiving and caring for and applying to that use the wages earned by the husband and son, having no estate of her own. The son never was emancipated and continued to remain at home, turning over to his stepmother his wages, to which his father would be entitled while he remained at home. We are of opinion that the only inference to be drawn from the evidence is that the wife acted as the agent of the husband in the management of the household. The plaintiff had left home and was earning her living in New York City at the time she returned to her father's house, which she did at the written request of the stepmother, who had become so enfeebled as to be unable, as the son testifies she said, "to do the work any more around the house." The father died about six months before the mother, leaving some estate, against which the plaintiff presented no claim, and now seeks to recover from the estate of the deceased stepmother.

The plaintiff relies upon a contract of employment by the wife and circumstances which, she claims, tend to show a charging by the wife of her separate estate, to overcome the presumption that between members of a household services are gratuitously rendered, for "Proof of the services, and as well of the family relation, leaves the case in equipoise, from which the plaintiff must remove it, or fail." *Disbrow* v. *Durand,* 25 *Vroom* 343.

Domestic services rendered by a daughter in a household of which her father is the head, will not raise an implied promise on the part of a stepmother who requested the services, to pay for them out of her own estate, to the exoneration of the husband. To fix such a liability there must be,

either an express contract to pay out of her own estate, or circumstances clearly showing the assumption of individual liability on her part exclusive of that of her husband.

In this case there is no evidence establishing such a contract or proof of circumstances from which such assumption can be inferred. The strongest evidence in favor of the plaintiff comes from the testimony of Hannah Leahey, a sister of the plaintiff, who says that she saw a letter written by the stepmother to the plaintiff in which she said that she "had been very sick and that she felt now that she could not take care of the home, my father and my brother and herself, and that she needed some one up there in the house, and she thought that Dell would be the best, and she asked Dell, if Dell would come she would pay her the same as she was getting in New York City, which was $8 a week." This letter is consistent with the employment by the wife of a servant to do the work which the husband was bound to provide for. It imports nothing more than, that as the agent of the husband, she was employing some one to do the housework. It is not denied that a wife can contract as a principal in a matter of this kind, "but to fix upon her such a liability it must affirmatively appear that she made the purchase on her individual credit. There must be either an express contract on her part to pay out of her separate estate, or the circumstances must be such as to show clearly that she assumed individual responsibility for payment, exclusive of the liability of the husband. For if the purchase be made under such circumstances as that an action could be maintained against the husband for the contract price, the debt so contracted becomes his debt, and the statute invalidates the contract of the wife for its payment." *Wilson* v. *Herbert,* 12 *Vroom* 454, 461; *Feiner* v. *Boynton,* 44 *Id.* 136.

Can it be doubted that if the daughter had brought suit against her father, or presented a claim against his estate after his death, for these services, she could have recovered if they were not gratuitous, or that the husband would have been charged with a contract, if one existed, as made in his behalf by his wife as his agent? We think not. There was

no express contract to pay out of the wife's separate estate; in fact, she had none, and the circumstances clearly show that the wife's action was within the line of her implied agency to employ a servant for her husband. In most cases the employment of domestic servants is by the wife, and there is nothing in this case which takes it out of the ordinary agency of a wife in such matters.

We think that the nonsuit ought to have been allowed, and therefore this judgment should be reversed.